ODOM, J.
 

 Plaintiffs allege that they own a certain tract of land in Red River parish, and that defendants J. B. Ardis and the Texas Company, a corporation, have slandered their title, the said Ardis by claiming to be the owner of all minerals, including oil, in and under said land, and the Texas Company by claiming to have an oil, gas, and mineral lease on the property.
 

 Defendants, in answer, asserted ownership of the minerals in themselves, thereby converting the suit into a petitory action, making the said Ardis and the Texas Company plaintiffs, in the converted action.
 

 AVhen the case was called for trial in the lower court, the Calhouns, defendants in the petitory action, filed a plea of prescription of ten years, liberandi causa, under articles 789 and 3546' of the Civil Code, the basis of the plea being that, although Ardis had reserved the minerals when he sold the land to R. A. Calhoun, plaintiff’s ancestor, and that the Texas Company had a mineral lease thereon from Ardis, it had not been developed for minerals within ten years from the date of the reservation of the servitude, and that therefore the servitude had been lost by nonuser for ten years.
 

 Ardis and the Texas Company then filed a plea of estoppel the basis of which is that R. A. Calhoun, the ancestor of these plaintiffs, defendants in the converted action, had on May 23, 1913, ratified the lease given by Ardis to the Texas Company.
 

 There was judgment in the lower court in favor of Ardis and the Texas Company, and the Calhouns appealed.
 

 2. The sole issue in this case is whether J. B. Ardis and the Texas Company, defendants in the slander suit, plaintiffs in the converted action, have lost the minerals in and under the land involved by nonuser of the servitude for ten years.
 

 On December 30, 1912, J. B. Ardis sold to R. A. Calhoun, the ancestor of plaintiffs in the slander suit, the following described
 
 *423
 
 property in Red River parish, with reservation of the minerals, to wit:
 

 “Beginning at the corner common to Sections fifteen, fourteen, twenty-two and twenty-three (15, 14, 22, 23) in Township Thirteen (13), Range eleven (11) west, thence westernly 18.80 chains, thence northwenly 38.40 chains, thence easternly 58.80 chains, thence southemly 38.40 chains, thence westernly 40 chains to the point of beginning; said tract of land containing 222.89 acres, more or less, said land being in sections fourteen and fifteen, Township and range aforesaid, and lying and being situated on the east side of the Texas and Pacific Railroad.
 

 “Also the following described lands: — A certain tract of land bounded as follows, beginning at the southwest corner of Section Fifteen in Township Thirteen North, Range Eleven West, run thence due east fifty nine and eighty sixth hundredths (59.86) chains to the right-of-way of the Texas & Pacific Railway Company, thence North thirty eight and forty hundredths (38.40) chains, thence west fifty nine and eighty sixth hundredths (59.86) chains to west boundary line of said Section Fifteen, thence south thirty-eight and forty hundredths (38.40) chains to point of beginning, containiiig 229.80 acres. * * * ”
 

 “It is further agreed and understood that the vendor herein retains all of the mineral rights under said property, and with the right to enter upon said property for the development of same.”
 

 On May 14, 1913, Ardis granted to the Producers’ Oil Company a mineral lease on the property which lease was subsequently assigned to the Texas Company. The description of the property covered by the lease is identical with that in the deed from Ardis to Calhoun.
 

 Ten days later, Calhoun, who then owned the land, having bought it from Ardis in 1912, executed a formal ratification of the mineral lease which Ardis had made to the Producer's’ Oil Company.
 

 By reference to the deed from Ardis to Calhoun, and to the lease from Ardis to the Producers’ Oil Company, it will be noted that there were two tracts of land described, one containing 222.89 acres on the east side and another of 229.86 acres on the west side of the Texas & Pacific Railroad.
 

 The Texas Oil Company, the assignee of the mineral lease granted by Ardis, drilled, within ten years, some seventeen wells on the tract of land east of the railroad, a number of them being producers which are yet producing oil. But no wells have been drilled on the tract of land west of the railroad.
 

 The Calhouns concede of course that, in so far as the land east of the railroad is concerned, it has been sufficiently developed and they make no contention that the servitude has been lost as to that tract. Their contention is that, inasmuch as there have been no wells drilled on the tract west of the -railroad, and^ no attempt whatever to develop it, Ardis and his lessee have lost the minerals in and undef that tract by nonuser of the servitude for ten years.
 

 This contention is based upon the holding of this court in the cases of Lee v. Giauque, 154 La. 491, 97 So. 669, 670; Keebler v. Seubert, 167 La. 901, 120 So. 591, 592; Palmer Corporation v. Moore, 171 La. 774, 132 So. 229; and Arent v. Hunter, 171 La. 1059, 133 So. 157.
 

 
 *425
 
 In those cases it was held that oil and gas operations on one parcel of land, where several tracts are covered by the same lease, does not interrupt prescription as to other parcels not contiguous to the one developed, and that, in a deed containing two or more parcels of land with reservation of the right to exploit the land for minerals, such reservation constitutes the retaining of as many servitudes as there are tracts of land.
 

 In order to escape the consequences which necessarily follow from the holding in those cases when applied to the case at bar, learned counsel for Ardis and the Texas Company earnestly argue that the deed from Ardis to Calhoun in which he reserved the minerals and the lease from him to the Producers’ Oil Company, covered hut one tract of land; that the land east and that west of the railroad was in fact one plantation which had always been regarded as one single tract cut into two parcels by the railroad.
 

 Counsel are in error, both as a matter of fact and of law.
 

 The record shows that at one time all this land was in one tract, and was considered one plantation. But on February 7, 1902, B. W. Marston, who then owned the entire tract, sold to the Texas Pacific Railroad Company in fee a strip of land one hundred feet wide north and south through the land. This was not merely a deed conveying a servitude on the land for a right of way, but a deed to the strip of land in fee. The one tract of land was thereby dismembered into two tracts.
 

 As evidence that, since the sale of this strip to the railroad, the land has been considered as two separate tracts, we refer to the description in the deed from Ardis to Calhoun, in which two tracts are separately described. Following the description of the first tract by metes and bounds, the deed recites :
 

 “Said tract of land containing 222.89 acres more or less, said land being in Sections fourteen and fifteen, Township and range aforesaid, and lying and being situated on the east side of the Texas and Pacific Railroad.
 

 “Also the following described lands. * * *»
 

 Then follows a description, by metes and bounds of the second tract, “containing 229.80 acres * * * situated on the west side of the Texas and Pacific Railroad.”
 
 Then follows this: “Said two tracts containing in the aggregate 45É.7S acres more or less.”
 
 (Italics ours.)
 

 Going further back, we find that on May 7, 1903, B. W. Marston sold to O. L. Abington the tract of land on the west side of the railroad, and that, on October 16 of that year, he sold to said Abington the land on the east side of the railroad. The description of the two trácts is identical with that found in the deed from Ardis to Calhoun.
 

 On November 11, 1907, O. L. Abington sold to J. B. Ardis the two tracts under one deed, which deed, after describing the tracts separately, recites:
 

 “Said
 
 two tracts
 
 containing in the aggregate 452.75 acres more or less.” (Italics ours.)
 

 These two tracts are not contiguous. A strip of land one hundred feet wide owned by the railroad in fee intervenes.
 

 
 *427
 
 In Lee v. Giauque, supra, we said:
 

 “And to constitute a single tract of land the lands must be so situated that one may-pass from one part to the other without passing over the lands of another,” citing Anvil Hydraulic & Draining Co. v. Code, 182 F. 205, 206, 105 C. C. A. 45.
 

 Counsel refer us to the case of Ardis v. Texas Co., 155 La. 790, 99 So. 600, 601, where they say this court held that these lands constituted a single tract. That suit involved the same land and the same lease here involved. There Ardis, who had granted the lease, was suing the Texas Company to cancel the lease as to the land west of the railroad on the ground that there had been no development on that side.
 

 One of Ardis’ contentions in that case was that the land covered by the lease consisted of two independent tracts “separated from each other by the strip occupied by the Texas and Pacific Railroad Company.” But the court did not hold, as contended by counsel, that the land consisted of one single tract. A ¿reading of the opinion discloses that all the facts relating to this particular point were not before the court. It was not disclosed whether the railroad company owned in fee the strip on which its track was laid or “only a servitude on that strip.”
 

 Without passing directly upon the point, what the court said was that “for the purposes of this suit we shall consider the land as consisting of two tracts, separated from each other, at the time of the execution of the lease.”
 

 It was not necessary to determine in that case whether these were two separate tracts or one single tract, because, the court said, “the instrument [referring to the lease] is so worded as to make the successful effort affect both tracts alike, exactly as if they constituted one tract in every particular.”
 

 3. Article 789 of the Civil Code provides that “a right to servitude is extinguished by the non-usage of the same during ten years,” and article 3546 that “The rights of usufruct, use and habitation and
 
 servitudes
 
 are lost by non-use for ten years.” (Italics ours.)
 

 This court has repeatedly and consistently held that: “Where a vendor reserves the right, in conveying land, to exploit the land for minerals, the reservation is the retaining of a servitude on the land for that purpose” within the meaning of the term “servitude,” as used in those articles of the Code.
 

 Frost-Johnson Lumber Co. v. Sailing’s Heirs, 150 La. 756, 91 So. 207, 209; Wemple v. Nabors Oil Co., 154 La. 483, 97 So. 666; Lee v. Giauque; Keebler v. Seubert et al.; Palmer Corporation v. Moore; and Arent v. Hunter, supra.
 

 It is also settled jurisprudence that a servitude on land for exploiting it for oil and gas, whether created by reservation or by grant, is lost or extinguished if not exercised within ten years.
 

 Arent v. Hunter, supra, and numerous authorities cited in the opinion on rehearing at page 1073 of 171 La., 133 So. 157, 161; Palmer Corporation v. Moore, supra; Louisiana Petroleum Co. v. Broussard, 172 La. 613, 135 So. 1.
 

 On the Plea of Estoppel.
 

 Both Ardis and the Texas Company filed pleas of estoppel. The basis of the pleas is that R. A. Calhoun, the ancestor of plaintiffs, in the slander suit, ratified the
 
 *429
 
 lease made by Ardis to tbe Oil Company and made it bis own on May 23, 1913, ten days after tbe date of tbe lease. It is argued by counsel that, inasmuch as Calboun ratified tbe lease thereby mating himself a party to it, be can no more plead that tbe servitude has been lost by nonuser than Ardis himself could, and that Ardis could not urge that plea as against the oil company because it was held in tbe case of Ardis v. Oil Co., supra, that tbe oil company bad sufficiently complied with tbe terms of tbe lease as to development.
 

 Tbe effect of that decision was to recognize the oil company’s right, in so far as Ardis was concerned, to make further development if be saw fit. But tbe oil company has, since tbe case was lodged in this court, “surrendered and released back to its lessor and co-defendant, J. B. Ardis, all right, title and interest in and to tbe land in controversy in this suit, which rights it formerly held and urged under that certain oil and gas lease executed by said J. B. Ardis to tbe Producers Oil Company under date of May 14, 1914.”
 

 Counsel for the oil company moved to dismiss tbe appeal in so far as it was concerned. Counsel for appellee certified that they bad no objection to tbe dismissal of tbe appeal, and tbe appeal was dismissed.
 

 As tbe case now stands, tbe controversy is between tbe Calhouns and Ardis. Tbe Calhouns own tbe land on which Ardis reserved tbe servitude in 1912. Tbe present suit was filed in July, 1930.. More than ten years elapsed from the reservation of tbe servi-. tude to the filing of tbe suit, and neither Ar-dis nor any one for him has attempted to develop tbe tract of land on tbe west side of tbe railroad. Tbe servitude as to that land is therefore extinguished, it is lost.
 

 For tbe reasons assigned, tbe judgment appealed from is reversed, and tbe plea of prescription of ten years filed by defendants in tbe petitory action is sustained, all costs to be paid by tbe appellees.