ODOM, Justice.
 

 Gipson T. Goree, the plaintiff, owns 80 acres of land in Claiborne Parish, described as the East 1/2 of the Northwest 1/4, Section 26, Township 23 North, Range 8 West. He acquired the land from Dayton Reeder on October 13, 1921, by deed containing a clause reciting that it was expressly agreed that all the minerals and mineral rights under and pertaining to the land were “reserved to Grantor herein and not included in this conveyance”.
 

 • Prior to the date on which Reeder sold the land to the plaintiff Goree, Reeder had sold to certain parties a 1/4 interest in the oil, gas, and other minerals in and under the land, and to certain other parties a 1/4 interest in the minerals. Prior to these sales, Reeder had leased the 80 acres of land to another party for the production of minerals. It is not necessary to go into detail as to the disposition of the minerals in and under this 80 acres of land and as to the leases which covered it at the time Reeder sold the land to Goree, the plaintiff. It suffices to say that, at the time Goree purchased the land from Reeder, the 80-acre tract was covered by an oil and gas lease owned by the Ohio Oil Company and the Gulf Refining Company, which lease by mesne conveyances passed into the hands, in whole or in part; of various and sundry other parties, and finally into the hands of the Midstates Oil Corporation.
 

 Under the lease owned by the Ohio Oil Company and the Gulf Refining Company, which covered the entire 80-acre tract of land at the time Goree, the plaintiff, acquired it, there were drilled on the 80 acres of land four wells which produced oil in paying quantities. Well No. 1 was completed as a producer on August 28, 1922, and continued to produce oil in paying quantities until February 1, 1932, when it was abandoned. Well No. 2 was completed as a producer on December 2, 1922, and continued to produce until January 29, 1932, when it was abandoned. Well No. 3 was completed as a producer on January 10, 1923, continued to produce oil in paying quantities until May 20, 1942, and was finally abandoned on December 19, 1942. Well No. 4 was brought in on May 1, 1923, and continued to produce until January 25, 1932, when it was abandoned.
 

 
 *993
 
 This suit was filed on October 9, 1942, and it appears, therefore, that Wells Nos. 1, 2, and 4 had ceased to produce oil and had been abandoned more than 10 years prior to the date on which the suit was filed. But Well No. 3 was not abandoned until after the suit was filed.
 

 On April 1, 1942, while Well No. 3 was still producing oil in paying quantities, the Midstates Oil Corporation, assignee of the leases, began the drilling of a well on the 80-acre tract. This well was completed as a producer on April 24, 1942, and was still producing oil in paying quantities when the suit was filed.
 

 According to the testimony and a map or plat introduced and filed in evidence, a public road, known as the Old Haynesville and Shongaloo Road, crosses the northeast corner of the 80-acre tract, running in a northwesterly and southeasterly direction. The portion of the 80-acre tract lying north and east of this public road is triangular in shape and contains 5.86 acres. Well No. 3, which produced oil until May 20, 1942, is located on this portion of the land. Wells Nos. 1, 2, and 4, which, as we have stated, quit producing and were abandoned more than 10 years prior to the date on which this suit was instituted, are located on that portion of the 80-acre tract lying south and west of the public road. The well drilled by the Midstates Oil Corporation is also located on that portion of the land lying south and west of the road.
 

 By the present suit the plaintiff is seeking to have set aside, canceled, and erased from the record all of the mineral leases, claims to over-riding royalties, and claims to ownership of interests in the minerals, in so far as they affect all that portion of the East 1/2 of the Northwest 1/4, Section 26, Township 23 North, Range 8 West, lying south and west of the Old Haynesville-Shongaloo public road. Plaintiff is not seeking to have the leases, etc., cancelled as to that small triangular portion lying north and east of the road, on which Well No. 3 is located.
 

 The defendants in their various answers resisted plaintiff’s demand on the ground that the lease contracts which covered the entire 80-acre tract had been kept alive by drilling operations and production of oil from the land, and that they therefore still owned all of the oil, gas, and other minerals in and under the entire 80-acre tract.
 

 There was judgment rejecting plaintiff’s demands in toto, from which judgment plaintiff is prosecuting this appeal.
 

 The plaintiff, Gipson T. Goree, instituted this action as a slander of title suit. The slander of title is alleged to consist of defendants’ claim to be the owners of all the oil, gas, and other minerals in and under that portion of the tract of land owned by plaintiff which lies south and west of the Old Haynesville-Shongaloo public road. Plaintiff alleged that he had been damaged in the sum of $40,000 resulting from the Midstates Oil Corporation’s drilling a well south and west of the road in April, 1942, and its unlawfully extracting from the land large quantities of oil. He prayed for judgment for $40;000, plus attorney’s fees for $10,000.
 

 The defendants answered the suit, alleging that their leases were still alive as
 
 *995
 
 to the entire 80-acre tract, and claiming ownership of the oil, gas, and other minerals in and under said property, thereby converting the suit into a petitory action.
 

 The plaintiff filed a plea of prescription of 10 years, under Articles 789 and 3546 of the Revised Civil Code, in which plea he alleged that the defendants did not exercise any of the rights claimed or asserted by them under the lease, upon that portion of the land south and west of the road, from February 1, 1932, until April 1, 1942, or a period exceeding 10 years.
 

 Article 789 of the Code provides that
 
 “A
 
 right to servitude is extinguished by the nonusage of the same during ten years,” and Article 3546 provides that “The rights of usufruct, use and habitation and servitudes are lost by nonuse for ten years.”
 

 Plaintiff’s case is grounded solely upon the theory that, at the time the leases were made and at the time he acquired the property, the 80-acre tract was severed into two separate and distinct tracts by the public road referred to in the petition as the Old Haynesville-Shongaloo Road, and that the servitude resulting from the granting of the mineral leases had lapsed or been lost by non-usage for more than 10 years, in so far as that portion of the 80-acre tract south and west of the public road is concerned.
 

 Counsel for plaintiff argue that the fee title to the strip of land over which the road runs is now, and was when plaintiff purchased the property, vested in the public, and that therefore the 80 acres of land is completely severed into two separate and distinct tracts, one of the tracts being north and east of the road and the other south and west of it. If counsel are correct in their theory that the fee title to the strip of land used by the public as a road is vested in the public, there should be judgment in favor of plaintiff, because a period of more than 10 years elapsed during which no use whatever was made of the land south and west of the road. See Calhoun v. Ardis, 174 La. 420, 141 So. 15, and the cases there cited.
 

 The theory advanced by the defendants is that the fee title to this roadbed is not vested in the public, but on the contrary the strip of land is still a part of the 80-acre tract and the public has only an easement or servitude on the land for use as a public road. If their theory is correct, the judgment appealed from, which rejected plaintiff’s demands, is correct and must be affirmed, because it clearly appears — in fact plaintiff admits — that oil has been continuously produced from some portion of the 80-acre tract since August 28, 1922, when Well No. 1 was completed as a producer.
 

 The trial judge in his written opinion correctly says:
 

 “The principal issue in the case is whether or not the fee title to the Old Haynesville and Shongaloo road is in the public or is in the plaintiff under his deed from Reeder, or putting the proposition in a different way whether or not the road divides the 80 acres into two tracts so that the development and production north and east of' the road does not interrupt the running of prescription on the minerals or mineral servitude south of the road.”
 

 
 *997
 
 The judge further states:
 

 “It is further plaintiff’s contention that his situation is similar to the case of Calhoun v. Ardis, 141 So. 15, 174 La. 420, wherein lands on opposite sides of a railroad were held to constitute separate tracts of land and that development on one side of the railroad was not sufficient to interrupt the running of prescription on a mineral servitude on the other side of the railroad. In that case, the railroad owned in fee the title to the railroad right of way.”
 

 Speaking of the laying out of the Old Haynesville-Shongaloo Road, the trial judge said that it was established to his satisfaction that the road is a public road, and that the public has a right of passage over the land. This right of passage, he says, has existed for perhaps 60 years or more. He says further — and this is not disputed, but admitted — that “in 1896 on the petition of citizens in that portion of the parish, the police jury proceeded to lay out and open this road through free-holders appointed by it for that purpose. All the 'formalities of the law were perhaps not complied with, but the police jury was endeavoring to follow the law which provided means of laying out roads for the benefit of the various communities of the parish. The testimony shows that the road had been in use long prior to 1896 so far as this particular piece of road was concerned. However, since 1924 one Mr. L. M. Wynn as foreman for the police jury of Claiborne Parish has worked, maintained and kept up this road”.
 

 As the judge says, clearly the police jury was endeavoring in 1896 to lay out and establish a public road in accordance with existing law, which at that time was Sections 3369 and 3370 of the Revised Statutes. Section 3369 of the Statutes provides that “All roads to be hereafter opened and made, shall be laid out by a jury of freeholders” appointed by the police jury. That was what was done in this case. Section 3370 provides that “Whenever any individual, through whose land a road laid out as aforesaid shall pass, may be dissatisfied with the decision of the freeholders laying out the same, either as to the course the same is to take, or to the damages to him assessed, he may have an appeal to the district court for the parish in which said road lies.”
 

 The record does not disclose that the owner of the land was dissatisfied with the decision of the freeholders or that any appeal was made to the district court. Since there is no evidence of dissatisfaction on the part of the owner of this particular tract of land through or on which this road was laid out, we must assume that he was satisfied with the decision of the freeholders.
 

 Under the jurisprudence, the fee title to the roadbed did not become vested in the public as a result of the laying out and establishment of this public road by order of the police jury.
 

 In Paret v. Louisiana Highway Commission, 178 La. 454, 151 So. 768, 769, we said:
 

 “Sections 3369 and 3370 of the Revised Statutes do not prescribe a method by which police juries may acquire title to the land needed for public road purposes, but only a method by which they may acquire a
 
 *999
 
 right of passage or a servitude over the land, the fee remaining in the owner of the soil. Civ.Code, art. 658; Bradley v. Pharr, 45 La.Ann. 426, 12 So. 618, 19 L.R.A. 647; Fuselier v. Police Jury, 109 La. 551, 33 So. 597; Police Jury v. Martin, 140 La. 848, 74 So. 170.”
 

 Article 658 of the Revised Civil Code, which is found under the general heading “Of Predial Servitudes or Servitudes of Land”, reads as follows:
 

 "Art. 658
 
 [654],
 
 Ownership, How Affected By: Public Roads.
 
 The part of an estate upon which a servitude is exercised, does not cease to belong to the owner of the estate; he who has the servitude has no right of ownership in the part, but only the right of using it.
 

 “Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the use of them; the owners of the land can not change the roads except in conformity with the regulations of the police established on this subject.”
 

 It is too clear to admit of argument that the fee title to this roadbed did not pass to the public in 1896 when the road was laid out and established by the police jury, nor did it pass, under the law then in force, as a result of the police jury’s taking over and maintaining the road at public expense. But the road did become a “public road”, because Section 3368 of the Revised Statutes, as it then read, provided that all roads in this state “that have been opened, laid out or appointed by virtue of any act of the Legislature heretofore made, or by virtue of an order of any of the police juries in their respective parishes, are hereby declared to be public roads, as are also all roads made on the front of their respective tracts of land by individuals, when the said lands have their front on any of the rivers or bayous within this State.”
 

 This section of the Revised Statutes was amended and re-enacted by Act
 
 No. 220,
 
 page 417, of 1914. As amended, it reads word for word like the original down to, and including, the word “parishes” in the fourth line, the amendment adding the following clause immediately after that word:
 
 "or zvhich have been, or shall hereafter be kept up, maintained or worked for a period of three years by authority of the Police Juries in their respective
 
 parishes.” Thus, under that section of the statute as amended, all roads which have been, or shall hereafter be, kept up, maintained, or worked for a period of three years by authority of the police juries are “public roads”, even though not originally opened, laid out, or appointed by virtue of any act of the Legislature or by virtue of an order of any police jury. That is the only change made in the section by the amendment.
 

 The testimony shows that the police jury kept up, maintained, and worked this road for a period of more than three years prior to the adoption of this act, and that' the road is still being kept up and maintained by the parish; so that the road is now, and has for many years been, a “public road”, whether it was originally laid out and established as such by order of the police jury or not.
 

 
 *1001
 
 The theory of plaintiffs counsel is that, in all cases where a road becomes a public road in the manner prescribed by the amendment, there results what they refer to as a “statutory dedication” to the public of a fee title to the roadbed.
 

 There is no merit to their argument. What the statute as amended says and what it means is that, where a road is kept up and maintained by a police jury for a period of three years, it becomes a “public road”. This amendment cannot be construed to mean that the Legislature intended to deprive the landowner of his fee title to the roadbed merely because he acquiesced for a period of three years in the use of his property for public purposes. His acquiescence in the use of his property for public purposes for a period of three years after the police jury takes over the maintenance of the road indicates that he is willing for the public to use it as a highway, but in no sense does it indicate that he is willing to part with his fee title to the roadbed.
 

 In Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709, 711, it was held that a road which was maintained as a public road by a police jury for three years, as provided by Act No. 220 of 1914, amending Revised Statutes, Section 3368, became a public road by “tacit dedication”. The meaning of the word “tacit”, as used by the court in that case, is: “Done or made in silence; implied or indicated, but not actually expressed; * * * Arising without express contract or agreement”. (Webster’s New International Dictionary.)
 

 That was an injunction suit to forbid further use of a road across plaintiff’s plantation as a public highway. The police jury set up four defenses, one of which was that the road became a public road by virtue of its being kept up, maintained, and worked for a period of three years under authority and supervision of the police jury, according to the provisions of Section 3368 of the Revised Statutes, as amended by Act No. 220 of 1914. The court held that this defense was well founded. On application for rehearing, the plaintiff contended that the defendant did not plead the prescription of three years. The court said in its per curiam refusing the rehearing:
 

 “The defendant pleaded, not that the road had become a public road by prescription, but that it had become a public road by tacit dedication. Perhaps we were wrong in calling section 3368 of the Revised Statutes, as amended by Act 220 of 1914, a statute of prescription. It is more appropriate to say that, by virtue of the statute, the road became a public road by tacit dedication.”
 

 The question whether the police jury had acquired a fee title to the roadbed was not involved in that case, and for that reason counsel for plaintiff suggest that the ruling there has no application to the issue involved in the case at bar. We think it does, because the court said that it was appropriate to say that by virtue of the statute the road became a public road “by tacit dedication.” According to counsel’s argument, it would be appropriate to say that, under such circumstances, there was a “statutory dedication”. But that is not what the court said in that case.
 

 There is a vast difference between a tacit-dedication and a statutory dedication of
 
 *1003
 
 property for public use. A tacit dedication is one which arises from silence, inactivity —one arising without express contract or agreement. A statutory dedication involves some deliberate, affirmative, active step taken in compliance with a statute by the landowner indicating a purpose and intent to dedicate.
 

 No one is presumed to give his property away.. The burden is on him who alleges a divestiture of ownership to prove it clearly. From the fact thát a landowner permits the police jury to lay out and establish a public road across his property without appeal to the courts as provided for by* Section 3370 of the Revised Statutes, and permits without, protest the use of the road by the public and stands idly by while the police jury is maintaining the road as a public road at public expense, it must be presumed that he intends to dedicate his property for use as a public road, but only in the manner and to the extent prescribed by the ancient laws. Among those ancient laws is Article 658 of the Revised Civil Code, which provides that the part of an estate upon which a servitude is exercised does not cease to belong to the owner of the estate; that he who has the servitude has no right of ownership “in the part, but only the right of using it.” This rule is made applicable to public roads, for. the Code says in the same article: “Hence the soil of public roads belongs to the owner of the land on which they are made, though the public has the use of them #
 
 * >>
 

 Article 658 of the Code of 1870 reads word for word like Article 654 of the Code of 1825, except, instead of the word “ownership”, as used in the last line of the first paragraph, the Code of 1825 used the word “property”.
 

 It is now, and has always been,, common practice in this state for police juries to change the course of public roads,, to straighten them out, to remove them from low to high ground, as public convenience and necessity might dictate, and to abandon the old roadbed. Section 3369' of the Revised Statutes provides that nothing shall “prevent any owner of the soil on which a public road shall pass, to re'sume the use and possession of such soil whenever the said road shall have been abandoned by the public, or shall have been transferred elsewhere with the consent of the owner and with that of the competent authority.” It cannot be presumed that a. landowner, who, without protest, permits the establishment of a public road on his. property, intends thereby to divest himself of the fee title to the roadbed.
 

 What Act No. 220 of 1914 says, in so far as it amended Section 3368 of the-Revised Statutes, is that “All roads in this. State * * * which have been, or shall: hereafter be kept up, maintained or worked for a period of three years by authority of the Police Juries in their respective parishes, are hereby declared to be public: roads.”
 

 The language used, which is that all such roads are “declared to be public roads”,, does not indicate that the Legislature intended to set aside the ancient law, which is that “the soil of public roads belongs to the owner of the land on which they are: made.”
 

 
 *1005
 
 Counsel for plaintiff, speaking of “dedication” in this case, say in their original brief on page 19 that “we have dedication "by virtue of a statute and not a dedication by estoppel and therefore a statutory dedication, which carries the fee”, and they cite the case of Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229, 232.
 

 The ruling in that case has no application whatever to the issue involved in the case at bar. In that case, the Rodessa Land & Development Company created a subdivision known as the “Parker Addition” to the Town of Rodessa, complying literally with the provisions of Act No. 134 of 1896. That act provides that whenever the owner of any real estate situated in this state “shall desire to lay off the same into squares or lots with streets or alleys between such squares or lots and
 
 with the intention of selling or offering for sale any of said squares or lots
 
 it shall be the duty of such owner or owners of such real estate, before selling any square or lot or any portion of same, to be caused to be made and filed in the office of the Keeper of the Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following. * * The section, township, and range in which such real estate lies; the number of squares by numerals from one up, and the dimensions of each square; the number of each lot or subdivision; the name of each street or alley, and its length and width, and
 

 “6. A certificate of the Parish Surveyor of the parish wherein the property is situated in [as to] the correctness of the map.
 

 “7.
 
 A formal dedication made by the owner or ozvners of the property
 
 or their duly authorized agent of all the streets, alleys and public squares or plats shown on the map
 
 to public use.”
 
 (Italics are the writer’s.)
 

 The land company surveyed the subdivision, made a map thereof, and'formally dedicated to the public the streets and alleys shown thereon. This map, with the approval of the parish surveyoi endorsed thereon, was recorded in the conveyance records of Caddo Parish. The plan or plat of the Parker Addition to the Town of Rodessa was prepared by a civil engineer at the request of the president of the land company, acting under a resolution of the board of directors of the company. In addition to filing the plan or plat for record, J. D. Lee, president of the land company, specifically declared that the streets and alleys set forth on the plan were dedicated to the public. The inscription on the plan reads as follows: “‘We hereby dedicate to public use all streets and alleys in the above subdivision’, signed ‘Rodessa Land & Development Company, By J. D. Lee, President.’ ”
 

 There was also endorsed on this map or plan the following: “ T hereby approve map as being correct as to acreage and as being in compliance with the provisions of Act 134 of 1896’, signed ‘L. Z. Crawford, Parish Surveyor.’ ”
 

 
 *1007
 
 In that case we said:
 

 “The case before us involves a statutory dedication. It is a regularly executed and
 
 formal
 
 dedication, signed, acknowledged and approved in due form, recorded in the proper office — a public record. * * * When the Rodessa Land & Development Company dedicated to the public the streets and alleys as set out on the original map of the Parker Addition, without any reservation or restriction indicating an intention to retain the ownership of the land covered by the streets and alleys, it divested itself of the fee as completely as if it had made a sale of the said streets and alleys to the public. Jaenke v. Taylor, 160 La. 109, 106 So. 711; Wilkie v. Walmsley, 173 La. 141, 136 So. 296.”
 

 In that case there was a formal, intentional dedication, by the owner of the land, of the streets to the public. In the case at bar there was no formal, intentional dedication, but merely what we referred to in Frierson v. Police Jury, supra, as a “tacit” dedication.
 

 For the reasons assigned, the judgment appealed from is affirmed at plaintiff’s costs.