The question at issue in this case is whether what is said to be a road adjacent to the defendant's property and leading from a gravelled road in the Plaisance area of St. Landry Parish to the plaintiff's property in the rear is a public road or whethit is part of the defendant's property and as such private property. The defendant acquired his property from Adolph Guillory on August 1, 1944, and as he claims that the strip in controversy is part of his property and therefore subject to his private ownership and control, he placed three gates across it thus obstructing its use to the public. The plaintiff, maintaining that it is a public road, has instituted this proceeding to have the court order the removal of the said obstructions and enjoin the defendant from further closing the road. He also asks for judgment against the defendant in the sum of $350 for the service of the attorney-at-law he was obliged to employ in order to bring this suit.
The defendant for answer denies that the strip of land is a public road and then sets out that formerly there was an old dirt road in the Plaisance area which was a public road, a part of which crossed the western portion of two properties adjoining the property he now owns, on the south, and which, when it reached the southern boundary line of his property, ran directly west along that line, but, he sets out further that many years ago, a new road was established, eliminating that part of the old dirt road just described. This new road was a gravelled road and the Parish abandoned that part of the old dirt road referred to. He further denies that the remainder of the strip of land along the southern boundary of his property, that is, that part running south from where the old dirt road entered the property to the plaintiff's property line on the cast, was ever a public road, established as such by any of the methods prescribed by law. Defendant attached a sketch of the old dirt road and the new *Page 90 
gravelled road to his answer. This sketch shows that the part of the old dirt road which has been described formed a sort of crescent beginning from the south corner of the property now belonging to Jeffrey David, to the south corner of the defendant's property. We estimate that it followed the line of defendant's property for a little less than half of the whole distance of his property to the rear, which is fourteen acres.
There are several methods under our laws by which a road may become a public road but is seems to be agreed in this case that the only method by which the one in controversy can be said to have become so is by that provision, among others, of Revised Statutes, Section 3368 which was re-enacted by Act No. 220 of 1914, which reads in part as follows: "All roads in this State * * * which have been, or shall hereafter be kept up, maintained or worked for a period of three years by authority of the Police Juries in their respective parishes, are hereby declared to be public roads; * * *." From the testimony adduced before him the district judge concluded that the road in question had been worked and maintained by the Police Jury of the Parish of St. Landry for a period of three years and therefore it had become a public road by "tacit dedication," as was held by the Supreme Court in the case of Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709, 710. He accordingly rendered judgment ordering the defendant to remove the gates or obstructions placed by him on the road and enjoining him from further interfering or disturbing the free and undisturbed passage of the plaintiff and of the public in general over the same. He rejected plaintiff's demand for the attorney's fees claimed by him.
From the judgment rendered defendant has taken this appeal and plaintiff has answered asking that it be amended by awarding the sum of $350 originally prayed for by him. In this court, defendant also filed an exception of no right or cause of action.
The exception of no right or cause of action is based on the proposition that there is no allegation nor any testimony in the record showing that proper compensation has been received by the defendant for the taking of his property for public purposes as he was entitled to under the law. In the alternative, it is urged that the Police Jury of the Parish of St. Landry was not, as it should have been, made a party defendant.
[1] In considering the exception we have to assume that the strip of land in controversy is a public road for otherwise no compensation would be due. Conceding that compensation is due however, we don't see how this defendant can take advantage of the lack of payment for necessarily, if the road became a public road at any time it was many years before he acquired his property from Adolph Guillory in 1944. It is the owner of the property, at the time the road is dedicated to public use, who is entitled to compensation and not a subsequent owner who acquires the property many years after the road existed. That clearly is what is meant by that provision of Section 3368, R.S., which we are concerned with in this case, as it relates to compensation. It reads: "It shall be lawful for any individual through whose land the Police Jury shall cause a public road to be laid out, to claim a compensation of double the assessed value of the said land." The claim for compensation must be made by the individual who owns the land and to whom it is assesed at the time the Police Jury causes the road to be laid out. As of that date the road became public property and whether compensation was made to the owner or not is a matter of no concern to a subsequent owner.
[2] As for having the Police Jury of St. Landry Parish made a party defendant in the suit, the only reason would be to inquire into the necessity for, or the location of the road, or perhaps also, to have the question of the amount of compensation determined, all of which questions, as far as this case is concerned, have long ago been foreclosed.
We find no merit in the exceptions and they are therefore overruled.
[3] On the merits we cannot agree with the trial judge, that the entire strip of land running from the gravel road to the rear of the property was "kept up, maintained or worked" by authority of the police jury *Page 91 
of St. Landry Parish in such manner as is contemplated under the provision of the section of law relied on, to make it a public road. It is twenty five years since the course of the old dirt road was changed by the presently existing gravel road. Up to that time there is no doubt but what the Parish worked and kept up, as part of the old dirt road, that segment of it which joined defendant's present property on the south line and runs west several acres. That was then definitely part of the public road. We doubt very seriously however that that part of the so-called road extending from that point to the rear of defendant's present property was worked, kept up and maintained by the police jury as it did the rest of it which was part of the old public dirt road. The testimony does show that the remainder of the strip of land was used as a pathway by a good many people for one or more purposes and it may be that as a matter of convenience to them, the Parish road grader when being used in that area, graded it on a few occasions. But we don't believe that what was done could be said to constitutea working and maintaining of the road within the meaning and intendment of the statute. It has been so long since even anything like that has been done however that whatever it was is of little avail in the matter of having established this as a public road. Rather convincing proof of this is seen in the photographs which are found in the record.
Plaintiff produced several witnesses who testified in a general way that they worked the road while they were employed by the Police Jury of the Parish or by the member of the Jury from the Ward in which the property in question is located. They also testified that they were paid by Police Jury vouchers or checks. We are sure these witnesses were truthful in saying that they were so paid but there wasn't a voucher or check produced to show that they were paid for work on this particular road. As a matter of fact there wasn't any record of the Police Jury produced at all. Mr. Abner Roy, President of the Police Jury testified that in his efforts to ascertain whether this road was a public road (meaning, we take it, whether the Police Jury had ever worked it or kept it up) had the records of that body investigated by the Secretary and nothing whatsoever was found to connect the road with the Police Jury in any manner. He admits he can't say whether the road was ever considered a public road or not.
Plaintiff testified that he worked the road himself from 1912 to 1924, under the orders of Adolph Guillory, then member of the Police Jury from the Ward. That would take us about to the time that the course of the old road was changed and no doubt he did work that part of the old road where it entered defendant's property and led west to the present gravel road. His testimony is not clear about his having worked the remainder of the road going to the rear but in as much as the road was then being used by Adolph Guillory, who owned the property now owned by the defendant, for his tenant's use and also by people in the neighborhood as a short cut to reach the Catholic Church not far to the north, it may well be that the road was graded at times, as already stated, for the convenience of these people. In this connection, it seems that Adolph Guillory would have been the one person to give the court the most information on the subject, and yet he was not placed on the witness stand. Counsel for plaintiff complains that defendant did not use him as his witness but plaintiff was the one who had undertaken the task of proving that this road had been kept up, worked and maintained by the Police Jury and Guillory's testimony, had that been the case, would have been far more favorable to him than to the defendant. The presumption arising out of his failure to call Guillory as a witness applies as much, if not more so, to him than it does to the defendant.
[4] According to the plaintiff's own testimony it appears that even during that time, Guillory himself, the member of the Police Jury, had placed a gate across the road. That certainly suggests the idea that he must have considered it his private property as no one, not even a member of the Police Jury, has the right to close a public road without the permission or authority of that body. Plaintiff was asked why it was that he did not, at that time, *Page 92 
demand that Guillory remove the gate he had erected and he answered he did not because Mr. Guillory had been too good to him. It would seem therefore that his attitude in demanding what he considers his rights under the law against his neighbors depends on his fancy as to whether the neighbor has been good to him or not. Pursuing this matter of closing the road further, we find from his testimony again that plaintiff himself at one time erected a fence at the place where the road enters his property. This, he says, he did in order to keep cattle out of his field. Surely, it would seem that if he had the right to do that, the road was not a public road at that point and still that is what he claims it is now.
In considering the extent to which work was done by the Police Jury on the entire length of the road, we find it pertinent to refer to the testimony of one of plaintiff's witnesses who was placed on the stand for that purpose. That is the witness Fremont Dupre. It seems very evident that the work he was referring to was that done on the old dirt road before its course was changed some twenty five years ago because, he states: "I always graded it before they put the gravel. After they put the gravel, I never went in there." From the testimony of Lawrence Sylvester and Martin Prudhomme both of whom claim they also worked on the road, it is difficult to say whether they referred to the old dirt road only or meant to say that they had worked the entire road. As for the witnesses Joe Reed and Adraste Dupre, all they testify to is having seen men grading the road. Reed speaks of the time when convicts worked on the roads and this as we may take judicial cognizance of, was many, many years ago.
The foregoing constitutes most of the testimony produced by the plaintiff and, as stated before, we don't find it at all convincing on the point at issue in the case. When considered further in the light of plaintiff's admitted efforts at buying the strip of land in controversy or another strip from the adjacent owner of the property south of the defendant's, it impresses us as being of a rather weak character.
[5, 6] The Frierson case cited by the district judge as authority for his holding in this case, presented facts which left no doubt on the question that the road in dispute had been worked and kept up by the Police Jury in conformity with the provisions of R.S. Sec. 3368 since the court made the positive statement that "the road in contest was kept up and maintained as a public road by the police jury, and worked upon from time to time by road gangs employed by the police jury, and at times by prisoners, all under the authority of the police jury, during a period exceeding 40 years before this suit was filed." The evidence in this case, as just indicated, is far from showing the existence of such a state of facts. The most reliable testimony shows that whatever work of that nature was done, was the maintenance and up-keep of the former dirt road which was abandoned as a public road when the new gravel road was laid out some twenty five years ago. The most that can be said to have been done on the remainder of the road leading to the rear, was an occasional brushing up which we don't believe amounted to a keeping-up of the road as required under the statute, and which, moreover, has not been done for so long a time that the road, if it ever could have been said to be public, has been abandoned as such, with the result that the fee title to the roadbed reverted to the owner of the property. That is the law as embodied in Section 3369 of the Revised Statutes and as indicated by the Supreme Court in the case of Goree v. Midstates Oil Corporation, 205 La. 988, 18 So.2d 591.
[7] In the Goree case it is distinctly held that a "tacit" dedication of a road by the property owner, such as the establishment of a road under Act No. 220 of 1914 as referred to in the Frierson case, does not deprive the landowner of the fee title to the roadbed. It is stated, as was held also in the Frierson case, that Act No. 220 of 1914, is not a statute of prescription and that if a road which had become public by virtue of having been kept up by the Police Jury for a period of three years, had its course subsequently changed and the old roadbed became abandoned, the fee title to *Page 93 
the roadbed reverted to the landowner because Section 3369 of the Revised Statutes provides that nothing shall "prevent any owner of the soil on which a public road shall pass, to resume the use and possession of such soil whenever the road shallhave been abandoned by the public, or shall have beentransferred elsewhere with the consent of the owner and withthat of the competent authority." (Italics ours.) The road in contest in this case can, in our opinion, be viewed from either condition stated because a part of it constituted part of an old road which was transferred elsewhere, presumably with the consent of the owner and of the competent authority, and all of it, as we view the testimony, has been abandoned by the public for a good many years.
For the reasons stated it is ordered that the judgment appealed from be and the same is now reversed, set aside and annulled, and
It is further ordered, adjudged and decreed that there be judgment in favor of the defendant and against the plaintiff rejecting the latter's demands and dismissing his suit at his costs.