125 So.2d 444 (1960)
Brown LE BOEUF, Plaintiff-Appellant,
v.
Mrs. William ROUX, Defendant-Appellee.
No. 11.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 11, 1961.
Certiorari Denied February 15, 1961.
Charles C. Jaubert, Lake Charles, for plaintiff-appellant.
Joe J. Tritico, Lake Charles, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER.
TATE, Judge.
The plaintiff sues to have a shell roadway declared to be a public road and to enjoin the defendant from interfering with its use. The plaintiff appeals from judgment dismissing his suit.
The chief issue is the nature of the consent or acquiescence by the landowner needed before a roadway maintained by parish or municipal equipment for three years or more becomes dedicated as a public road under LSA-R.S. 48:491, to be quoted below.
The road in question is 192' long and runs southerly from the Cameron Hotel, owned by the plaintiff, to the main state highway running through the Cameron community. The defendant owns the property to the east of the roadway; and in 1955, following a survey, she placed a fence of 2" iron pipes along what the survey showed to be the western boundary of her property. Although west of the iron pipes there still remained a shelled passageway at least twenty feet wide, these pipes were located within the area of the roadway formerly shelled and maintained by police jury equipment; this pipe fence being generally from 17 to 19 feet within the eastern edge of the shell. (See plat forming part of our decree: The eastern limits of the roadway are the dotted line marked "Edge Exist Shell Roadway".)
*445 
The plaintiff thereupon brought the present suit.
The plaintiff contends that the entire shelled roadway up to the line marked "Edge Exist Shell Roadway" on the attached plat has become a public road by reason of its having been maintained and worked for a period in excess of three years by the police jury of Cameron Parish without objection, *446 relying upon LSA-R.S. 48:491, which provides:
"All roads or streets in this state that * * * have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish or by authority of any municipal governing authority in its municipality shall be public roads or streets as the case may be. * * *"
The trial court held, however, that this maintenance by the police jury did not result in the dedication of the portion of the passageway encroaching upon the defendant's land because she had not requested nor intentionally consented to work being done on more than the twenty-foot strip dedicated as a "public lane" by a plat recorded in 1930 and because, although over the years this lane has gradually been widened to its present size, neither she nor the police jury had specifically intended to enlarge the twenty-foot strip formally dedicated by plat as a public passageway.
With some regret we must disagree with our learned trial brother. Irrespective of whether the landowner specifically requested or intended to dedicate as a public road that portion of her property included in the public roadway and maintained by public funds for far in excess of three years, we think that the police jury's maintenance thereof for such a period without objection from the landowner results under the statute in the dedication of this travelway as a public road. Porter v. Huckabay, 221 La. 120, 58 So.2d 731; Curtis v. Goebel, La.App. 1 Cir., 101 So.2d 462; Elum v. Kling, La. App. 1 Cir., 98 So.2d 700, certiorari denied; White v. Kinchen, La.App. 1 Cir., 94 So.2d 497. See also Wyatt v. Hagler, 238 La. 234, 114 So.2d 876. Referring to the statutory provision now found at LSA-R.S. 48:491, our Supreme Court stated in Goree v. Midstates Oil Corporation, 205 La. 988, 18 So.2d 591, 596, that it must be presumed that a landowner intends to dedicate his property for use as a public road when he "permits without protest the use of the road by the public and stands idly by while the police jury is maintaining the road as a public road at public expense * * *." The Court pointed out that the status as a public road by reason of public maintenance results from a "tacit dedication", i. e., "one which arises from silence, inactivityone arising without express contract or agreement", 18 So.2d 596. (Italics ours.)
We do not find relevant to determination of the issue before us the substantial evidence that the row of iron pipes placed in the roadway in 1955 by the defendant was located upon the old fence line shown as the eastern edge of the "public lane" by the 1930 plat. Likewise, we do not find to be of decisional significance that no formal resolution was adopted by the police jury authorizing work upon the road (see Fontenot v. Veillon, La.App. 1 Cir., 72 So.2d 587), nor that the police jurors under whose authority the roadway was maintained in its present width for these years did not intend to encroach upon anyone's private property.
For the uncontradicted testimony is that the roadway as widened to its present limits was in fact shelled and maintained pursuant to authority of these police jurors by police jury employees and equipment for a period well in excess of the three years required for its dedication as a public road under the cited statute. The police juror with charge of the matter for the seven years immediately preceding the dispute testified, for instance, that ever since he had taken office in 1948 he had authorized his employees to continue maintaining the disputed area of the roadway, which had been previously shelled, in the belief that it formed part of the right of way and without complaint from any landowner. Tr. 131-139.
Relying upon isolated expressions in the jurisprudence declaring travelways to be public roads, able counsel for the defendant-appellee urges that a landowner must intentionally acquiesce in the dedication of property used as a public road, at least to *447 the extent that the landowner must know that the roadway publicly worked is across his property line.
During most of the time between her purchase of the property in 1941, and her placing the iron posts in the road in 1955, the defendant lived within a block or so of the road in question and had never protested its widening over those years. Although she stated that she did not know that the police jury maintenance of the road encroached upon her own land, the defendant also testified that the road now extended to its present width inside of (i. e. 17 feet east of, or more) the western fence line of the property as it had existed at the time of her purchase. From this we must infer that the defendant visually observed that the road had been widened but that she did not protest this widening before 1955 because she did not realize until the survey of that year that the widened portion of the roadway included land within her property line.
In the present instance the landowner actually knew that the disputed strip was publicly maintained for more than three years as part of a public roadway. In our opinion, therefore, she cannot validly argue that her property was taken without notice to her simply because of a present claim that she did not then know that the true location of her western boundary included part of the roadway; although we do not necessarily decide that more than mere inaction on the part of a landowner is required to prevent a travelway publicly maintained for the requisite period of time from becoming a public road under the provisions of LSA-R.S. 48:491.
The uncontradicted evidence identifies the eastern limits of the roadway worked by police jury equipment as that shown as "Edge Exist Shell Roadway" in the plat of the Roux Survey, introduced in evidence (P-1) and forming part of this opinion. Because of the irregular nature of the eastern boundary of the roadway and of the lack of extremely detailed calls and distances, we hesitated to fix the roadway boundary in accordance therewith; but, under the evidence, such limits as reflected by the plat were the actual limits of the roadway worked by the police jury equipment.[1] We will accordingly fix the eastern roadway boundary in accordance with such plat, but we do so without prejudice to the right of the parties by supplementary proceedings to substitute for such plat a more detailed plat showing more exact calls and distances. Of course, our decree is also without prejudice to any right the police jury may have to abandon any portion of the enlarged roadway so as, for instance, to provide the defendant with a straighter road-boundary along the road servitude within her property.[2]
For the reasons above assigned, the judgment of the trial court dismissing the plaintiff's suit is reversed; and accordingly judgment is rendered in favor of the petitioner, Brown LeBoeuf, and against the defendant, Mrs. William Roux, declaring to be a public *448 road that portion of the defendant's property lying westerly of the dotted line shown as "Edge Exist Shell Roadway" per plat of Roux Survey by D. W. Jessen & Associates dated August 31, 1955 as amended October 21, 1955, recorded in the records of Cameron Parish October 24, 1955 as File No. 72404, Plat Book No. 1, page 193, introduced in evidence in this suit as P-1; a copy of a portion of which plat is attached to this judgment. This decree is without prejudice to the right of the parties by appropriate supplementary proceedings to substitute for such plat a more detailed plat showing more exact calls and distances; and it is also without prejudice to any right the police jury may have to abandon any portion of the enlarged roadway. The defendant is further enjoined from interfering with the use of such public roadway by the petitioner and the general public. All costs of these proceedings are assessed against the defendant-appellee.
Reversed and rendered.
NOTES
[1] We were given some concern by the large area worked by the police jury across the northern end of the defendant's property, which the evidence shows to have been at least 15 feet wide and 75-91 feet long, which defendant refers to as a parking lot. The evidence reflects that hotel customers do indeed use such area for such purpose, but the uncontradicted evidence also reveals that for many years prior to this litigation such northern strip was shelled and maintained by the police jury and used as a road for access to two tenant houses facing it situated on the defendant's land and to defendant's father-in-law's residence which was situated on the adjacent eastern property. Tr. 90-95; 129; 161-163.
[2] The public has merely a servitude or right of passage over land dedicated as a public road under LSA-R.S. 48:491 by public maintenance for three years, and any abandonment by the police jury of such roads is in favor of the landowner, in whom the fee title has always remained. Goree v. Midstates Oil Corporation, 205 La. 988, 18 So.2d 591; Bordelon v. Heard, La.App., 1 Cir., 33 So.2d 88.