226 So.2d 774 (1969)
CHEVRON OIL COMPANY, Plaintiff-Appellee,
v.
Hall W. WILSON, Jr., et al., Defendants-Appellees,
State Mineral Board, Register of State Land Office, State of Louisiana, Defendants-Appellants.
No. 11234.
Court of Appeal of Louisiana, Second Circuit.
May 27, 1969.
Rehearing Denied August 8, 1969.
Writ Refused November 10, 1969.
Jack P. F. Gremillion, John L. Madden, Baton Rouge, for defendants-appellants.
Blanchard, Walker, O'Quin & Roberts, Shreveport, for plaintiff-appellee.
Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, Falkenheiner & Calhoun, Vidalia, Thompson L. Clarke, Burton L. Wade, St. Joseph, Anthony J. Russo, New Orleans, for defendants-appellees.
Before AYRES, BOLIN and DIXON, JJ.
*775 DIXON, Judge.
Chevron Oil Company instituted this concursus proceeding. Chevron operates a unit in Lake St. John Field, in Concordia and Tensas Parishes, and seeks a judicial determination of the ownership of certain funds. The funds are royalties attributable to the beds of certain roads that lie within the unit. The tracts involved in this suit lie beneath what was formerly U. S. Highway 65 and is now Louisiana Route 568, except for one tract (numbered 61) which underlies a "parish road."
The case went to trial on documentary evidence and stipulations. The contest developed principally between the widow and heirs of Hall W. Wilson, on the one hand the State of Louisiana on the other, each claiming the ownership of the beds of the roads involved.
In a well-reasoned and comprehensive written opinion, the trial judge awarded judgment to the widow and heirs of Hall W. Wilson, decreeing them to be the owners of the land occupied by the former U. S. Highway 65. From this judgment there is an appeal by the State Mineral Board, the Register of State Land Office, and the State of Louisiana.
It was stipulated that, in the early nineteenth century, a road was established along the west bank of Lake St. John near the water's edge; that in 1919 the Police Jury of Concordia Parish requested the state highway department to survey a proposed relocation of the road to a position farther away from the lake bank but roughly parallel to the old road; that a new highway was constructed, completed in 1921. It became a part of the state and federal highway systems and was used by the public. There was no expropriation, and no written instrument conveying right of way for the new highway. The portion of the highway involved in this case passed through Ravenswood and Consuelo Plantations, owned in 1926 by Mrs. Grace M. Rhodes.
On September 23, 1926 three maps of subdivisions of a portion of the Ravenswood and Consuelo Plantations dated June, 1926 were recorded in the clerk's office in Tensas Parish. The maps bore the name of the surveyor, O. M. Fowler, but did not contain any words of dedication. One map delineated lots along both sides of a road designated as "improved highway." Other roads are also shown on the map, but (with the exception of "Tract 61") are not involved in this litigation. The other two maps filed the same date subdivide three of the lots that appeared on the largest map; those lots lay between the "improved highway" and Lake St. John. These two maps contain only one road, the "improved highway," and that highway is drawn in a solid black line. It is this "improved highway" which forms the basis of the present litigation. Mrs. Rhodes conveyed her property. Ravenswood and Consuelo Plantations, to others, and it was subsequently acquired by Hall W. Wilson, except for certain tracts which had previously been sold.
The state contends that the recording of the survey showing the "improved highway" constituted a statutory dedication of the beds of the highway, vesting title in the State of Louisiana. Hall Wilson's heirs contend that, since the highway was already in existence at the time of the recording of the plats and since its use and maintenance resulted in a "common law" dedication, the public already owned a servitude or a right of passage, but the ownership of the bed of the highway continued to be in Mrs. Rhodes and her successors in title; and that the recordation of plats of subdivisions which showed the "improved highway" did not evidence an intention on the part of Mrs. Rhodes to make a "statutory dedication," and did not effect a change in the title or ownership of the roadbed.
The trial judge's opinion points out that Article 658, in describing the nature of a servitude states that the "soil of public roads belongs to the owner of the land on *776 which they are made, though the public has the use of them * * *." Since Lake St. John was a navigable body of water, it is pointed out that there was a servitude along its bank, and the road built there, having been endangered by encroachments of the lake, was relocated (see Civil Code Articles 665, 707, 753 and 2014).
The relocation of the road resulted in its becoming a public road under the provisions of R.S. 48:491:
"§ 491. What are public roads
"All roads or streets in this state that are opened, laid out or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality, or which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority in its parish or by authority of any municipal governing authority in its municipality shall be public roads or streets as the case may be. Also all roads or streets made on the front of their respective tracts of lands by individuals when the lands have their front on any of the rivers or bayous within this state shall be public roads when located outside of municipalities and shall be public streets when located inside of municipalities. As amended Acts 1954, No. 639, § 1."
The trial judge correctly concluded that prior to the recordation of the surveys in 1926, there was an implied dedication of the "improved highway." This implied or tacit dedication, often referred to as a "common law" dedication, does not disturb the ownership of the bed of the road, but grants the public a servitude of passage. Goree v. Midstates Oil Corp., et al., 205 La. 988, 18 So.2d 591 (1944).
On the other hand, a "statutory dedication" conveys the ownership of the bed of a road to the public body involved, and occurs when there is substantial compliance with Act 134 of 1896, now R.S. 33:5051. Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., et al., 190 La. 957, 183 So. 229 (1938). See 13 Tulane Law Review 606; 25 Tulane Law Review 88.
Appellees rely on the maxims that no one is presumed to give his property away, and that the intention of the owner to dedicate a road to the public (and convey title) must be clearly established. One authority cited in brief and in Richard, et al. v. City of New Orleans, 195 La. 898, 197 So. 594, 599 (1940) adds, however, that "the intention to which courts give heed is not an intention hidden in the mind of the land owner, but an intention manifested by his acts. It is the intention which finds expression in conduct and not that which is secreted in the heart of the owner, that the law regards." Lawyers must also seek the intention of courts from "the intention which finds expression in conduct," and not merely from maxims quoted. With rare exception (see Wilson Motor Co., Inc. v. McDonald, at al., La.App., 69 So.2d 91 (1953), Louisiana courts have held that, when a plat of subdivision is recorded, ownership of the land beneath the streets passes to a public body. Even Wilson Motor Co. v. McDonald might be distinguishable from other cases involving "statutory dedication."
It is true that no Louisiana case has been found (with the possible exception of Wilson Motor Co. v. McDonald, supra), which concerned itself with the filing of a map showing a road which already existed prior to the subdivision.
If the three plats of O. M. Fowler dated June, 1926, had been filed before the "improved highway" shown on those plats had been constructed, the title to the "improved highway," and its ownership, would vest in the appropriate public body. Appellees argue that showing the "improved highway" on the map exhibits no intention to dedicate, and "the roads were shown on the plats because, like the Matterhorn, they were there." This may well be true. Under *777 the present state of the law, however, it seems to be unnecessary for the subdivider to have any actual intent with reference to the ownership of roads and highways delineated on his recorded plat. The jurisprudence prescribes the result of the act of the subdivider. Parish of Jefferson v. Doody, 247 La. 839, 174 So.2d 798 (1965) quotes from Dillon Municipal Corporations, 5th Ed., Vol. III, Section 1079:
"Where a plat is made and recorded and lots are sold with reference thereto, the requisite intention is generally indisputable."
Wilson Motor Co. v. McDonald held that there had not been a statutory dedication of the tract involved. Besides the fact that the road involved was shown only by dotted lines, the lots adjacent to that road were not numbered, and were sold by metes and bounds description; other lots in the subdivision were sold by number. The other streets in the subdivision were not extended to the road involved.
The rule of Arkansas-Louisiana Gas Co. v. Parker Oil Co. (supra) is now a rule of property in this state. It lends itself to certainty in title examination. An examiner now knows that, if a map is recorded, the roads shown on the subdivision plat are public and the ownership of the beds of the roads is in a municipality, a parish or the state. To require an examiner to determine whether a road shown on a recorded subdivision plat had been the subject of an implied dedication prior to recording the plat would place a considerable burden on an examiner. In the case before us, there are several roads shown on one of the maps recorded in September, 1926. Some existed prior to that time, and some might not have ever been opened. Nevertheless, the jurisprudence requires that we hold that the ownership of the roadbeds vested in a public body when the plats were recorded.
The petition for concursus alleges that there is a dispute among royalty owners "as to the ownership of Tracts 61, 80 and 252 and that portion of Tract 250 occupied by U. S. Highway No. 65." The petition for concursus set out the amounts of royalty attributable to each tract involved; $3,161.97 is attributable to Tract 61. In his written reasons for judgment, the trial judge found that Tract 61 "underlies a parish road," and that the other tracts involved lay beneath former U. S. Highway No. 65, now Louisiana State Route 568. No other mention is made in the judge's opinion of Tract 61. In the judgment signed, in what was apparently a typographical error, Tract 60 was decreed, like the other tracts involved, to be the property of the widow and heirs of Hall Wilson. Tract 61 was not mentioned in the judgment.
Tract 61 is marked on the Chevron Oil Company exhibit as being a portion of a road that forks to the east and southeast from old Highway 65. Tract 61 (though not named on the plat) bearing no designation, appears on one of the three maps of the subdivision of the Ravenswood and Consuelo Plantations recorded on September 23, 1926. One brief mentions the hiatus concerning Tract 61 and refers to an oral stipulation made at the trial. There is no note of evidence in the record. There is a reference in the minutes of court to a stipulation; this reference states that "State Highway 568 is still in use * * *, except Tract 61." There is no evidence in the record concerning what is now referred to as Tract 61. It does not appear whether such a road existed prior to the recordation of the plats of subdivision in 1926. There is no evidence of a conveyance of the road designated as Tract 61 to Hall Wilson.
Since the road now referred to as Tract 61 was on the plats of subdivision recorded in 1926, there was a statutory dedication of that road as well as of the "improved highway," or old U. S. Highway 65, or State Route 568. If Tract 61 was in fact a parish road, then it would appear that title to *778 the bed of Tract 61 vested in the Police Jury of Tensas Parish.
Consequently, we cannot make an adjudication of the ownership of that tract which has been designated as "Tract 61," nor of the $3,161.97 attributable to it, and it will be necessary to remand this case to the trial court for further proceedings with reference to "Tract 61" not inconsistent with this opinion.
For the reasons here expressed the judgment rendered by the district court is reversed as to that certain tract of land designated "improved highway" on the plat of the Ravenswood and Consuelo Plantations of O. M. Fowler dated May and June, 1926 and recorded on September 23, 1926 in Notarial Record "U" at pages 405, 406 and 407 of the records of Tensas Parish, Louisiana, and it is ordered and adjudged that there be judgment herein decreeing that the State of Louisiana is the owner of the bed of said "improved highway;" it is further ordered, adjudged and decreed that the Register of State Land Office is entitled to the one-eighth royalty interest attributable to said "improved highway," further described on the map referred to in plaintiff's petition as Tracts 80, 252 and that portion of Tract 250 occupied by U. S. Highway No. 65, and further ordering the Clerk of the Sixth Judicial District Court in and for the Parish of Tensas to pay unto the Register of State Land Office of the State of Louisiana the sum of $36,909.39 heretofore deposited in the registry of the court, (less and except the sum of $3,161.97 attributable to Tract 61 as described in plaintiff's petition) and, in addition, the clerk is further ordered to pay to the Register of State Land Office any additional sums deposited from time to time by the plaintiff attributable to the one-eighth royalty interest in the above described "improved highway;" all costs of these proceedings are to be deducted from the sums deposited in the registry of the court; it is further ordered that this case be remanded to the district court for further proceedings not inconsistent with this opinion to determine the ownership of the funds ($3,161.97, and any funds in addition thereto) attributable to that portion of land designated as "Tract 61" on the plat referred to in plaintiff's petition; in all other respects the judgment of the district court is affirmed.

ON APPLICATIONS FOR REHEARING
PER CURIAM:
In applications for rehearing it is noted that one portion of our opinion seemed to adjudicate the ownership of the bed of the road described as "Tract 61," if certain facts existed. It was not the intention of the court that the opinion be so interpreted, and the recounting of hypothetical situations in the opinion is to be considered neither the "law of the case" nor the holding of the court. There was not sufficient evidence in the record to adjudicate the ownership of "Tract 61."
If the bed of "Tract 61," referred to in brief and in the trial court's opinion as a "parish road," is owned by a parish, then RS 30:134 would seem to be applicable. That statute provides that, when "road beds belonging to the parishes are leased by the board, the leases shall provide for the payment of a royalty to the parish * * * of at least one-sixteenth of the minerals produced, to be used by the police jury for public purposes."
The applications for rehearing are denied.