KENNON, Judge.
Alleging that he and his co-heirs were owners of a tract of land called Porter’s Island, just east of Red River in Red River Parish, and that in order to get to this property it was necessary to travel from the state highway at Red Oak community along a road through property belonging to defendant, L. S. Huckabay, Jr., plaintiff filed suit seeking to enjoin defendant from obstructing or blocking the described road from Red Oak to Porter’s Island.
■ The petition set forth that the road in question had been declared to be a public road by the Police Jury of Red River Parish, and that same had been a public road since 1908. Reciting further that the defendant for several years had intimidated plaintiff and certain tenant hands by threatening them and ordering them not to travel on the road in question, and that specifically •on March 31, 1950, defendant had locked a gate through which the road passed, forcing plaintiff to leave his pickup truck on the property, and that the acts of defendant had caused him to lose an opportunity to rent the island, plaintiff asked *685 for $450 in damages, together with attorney’s fees.
In answer defendant admitted plaintiff’s ownership of Porter’s Island, and that he had requested plaintiff not to travel on the road in question, and that he had locked a gate over this road on the date alleged, but set forth that the road was a private plantation road, denying all allegations of the petition with reference to the road being a public one at any time.
The trial judge, in a written opinion, found that the Huckabay-Wilkinson Road, over which the case arose, was located wholly or almost wholly within the confines of the Pluckaibay plantation; that it presently served almost exclusively this one plantation; that the road had been kept closed and entered only through gates that had to be opened, and that the upkeep and work done on same by the Police Jury were not sufficient to bring the road within the provisions of Act No. 220 of 1914, relied upon by plaintiff.
From a decision rejecting his demands, plaintiff prosecutes the present appeal.
Plaintiff in brief states that he rests his case solely upon the proposition that the Police Jury of the Parish of Red River has kept up, maintained, and worked the road in question for a period of more than three years prior to the filing of the suit, and that same was therefore a public road within the provisions of LSA-Revised Statutes, Title 48, Par. 491 quoted below: “All roads in this state that are opened, laid out, or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in its respective parish, or which have been or are hereafter kept up, maintained, or worked for a period of three years by authority of any parish governing authority in its parish, shall be public roads. *■ * *”
The road in controversy is known as the Huckabay-Wilkinson Road. This road lies entirely within the plantation of defendant, L. S. Huckabay, Jr., from the point where it leaves State Highway 248, a distance of approximately one and a quarter miles, to the eastern bank of the old river bed surrounding Porter’s Island. At this point it joins with the Graveyard Road and then skirts the old river bed for approximately one-half -mile along the boundary line between the Huckabay- plantation and Porter’s Island, and then extends southward across the southern end of the Huckabay plantation and into - the adjoining T. J. Wilkinson property to a dead end on the Wilkinson property.
Plaintiff’s property, known as Porter’s Island, contains approximately fifty acres of land enclosed by present channel of Red River and a semi-circle-shaped old bed of the same river. This island lies something less 'than a mile south of the Red .Oak community on Louisiana State Highway No. 248. The map shows two roads leading from Highway 248 to the old river bed surrounding Porter’s Island. The westerly, or Graveyard Road, is a shorter route than the Huckabay-Wilkinson Road from Porter’s Island to Highway 248, and was the only used route by all parties going into Porter’s Island for many years prior to 1941, when improvements to the Huckabay-Wilkinson Road made it the more usable of the two routes.
Defendant Huckabay owns all of the land in the area of the Huckabay-Wilkin-son Road, except Porter’s Island and a tract in the bend of Red River owned by T. J. Wilkinson, Jr., which has been rented by Huckabay from Wilkinson for a number of years. For several years prior to the trial no one.had lived on Porter’s Island, and the only residents of the Huckabay plantation and the Wilkinson tract are the defendant and his tenants.
Plaintiff himself owns a large tract of lánd in the section adjoining Porter’s Island. The Graveyard Road runs through this portion of plaintiff’s property and it is a distance of less than one-half mile from the western boundary of plaintiff’s property over the Graveyard Road to the edge of the old river bed around Porter’s Island. Over the Huckabay-Wilkinson- Road (the one here in controversy), it is a distance of" more than a mile through defendant’s prop-' erty to State Highway 248.
Prior, to the construction,' in 1940, of a bridge over Bayou Nichols, and other improvement of the Huckabay-Wilkinson *686 Road, all the traffic from Porter’s Island to the state highway was over the old Graveyard Road. Defendant himself used this road in coming to his own place before 1940.
Defendant has always maintained a gate across the Huckabay-Wilkinson Road at the point where it enters his plantation after leaving the highway and crossing the L. & A. right-of-way. Over the years he has also maintained a gate across the road at the south end of the bridge over Bayou Nichols. This gate he kept open during the farming season and closed during the winter, when his fields were used for pasture purposes. A third gate at a point 'beyond where the road skirted the old river bed around Porter’s Island was kept closed. There were no gates on defendant’s property to obstruct the passage of one traveling the Graveyard Road from Porter’s Island to Highway 248.
The present lawsuit was precipitated when on March 31, 1950, defendant locked, by means of a chain and padlock, the gate maintained by him at the south end of the Bayou Nichols bridge.
Plaintiff’s testimony on the witness stand indicated that he based his suit, in part at least, upon the proposition that every property owner is entitled to a way of ingress and egress. However, the pleadings and the existence of the Graveyard Road from Porter’s Island through plaintiff’s other property and on out to the state highway alike justify plaintiff’s counsel in making the statement in brief that:
“The plaintiff-appellant rests his case solely upon the proposition that the Police Jury of the Parish of Red River has kept up, maintained, and worked, for a period of more than three years, the road in question and that it is therefore a public road.”
With reference to the working and maintenance of the Huckabay-Wilkinson Road, the record shows that in 1940 the Police Jury of Red River Parish constructed a bridge over Bayou Nichols, which was re-floored by the Police Jury in 1944. The road was used extensively by Army troops during the 1940-1941 maneuvers. This Bayou Nichols ¡bridge was washed away in the 1945 flood. Subsequently, the Police Jury used public funds received from the state on account of this flood disaster to build a new bridge a short distance north of the old one and to gravel portions of ,the road, the total cost for the bridge, gravel and culverts along the road amounted to more than $3000. In addition to the above expenditures, the Police Jury, in 1946, paid to defendant himself $223 for work done by him on bridges and culverts located on the road in controversy. In addition to expending these moneys, the road equipment of the Police Jury was used once or twice a year from 1940 to the date of trial for the purpose of grading the Huckabay-Wilkinson Road, or a substantial portion of it. During the same period and at more frequent intervals, defendant himself, using his own' equipment and a grader borrowed from a neighbor, worked on and maintained the road. Defendant individually did maintenance work from time to time on the bridges' and culverts without being reimbursed by the Police Jury.
The fact that plaintiff knew that defendant Huckabay individually worked the road is shown by the testimony of plaintiff quoted below :
“Q. Mr. Huckabay works this particular road? A. Yes, he worked that road.
“Q. In other words, it is necessary that Mr. Huckabay work the road in order that it may be in a state of repair so that the road can be used by Mr. Huckabay in his farming operations ? A. I don’t catch that. (Question was read).
“A. Well, he pastures the road during the winter and the stock tear up the road. In wet weather cattle just walk up and down and it gets impassable. If you put cattle in a pasture road in the winter, why, it gets impassable. Somebody has got to work it to drive a car over it.”
Plaintiff’s knowledge that the road in question was maintained by the defendant individually is further shown by defendant’s testimony, which plaintiff did not contradict, that on one occasion plaintiff passed along the road and stopped at a point where defendant was supervising the repair of a culvert or bridge and gave defendant *687 Huckabay $10 with the statement: “I know you are having to stand the expense on this and here is $10 to go against the labor.”
Defendant and other witnesses testified that it was not unusual for the Police Jury to spend money on private roads. The justification given being that the owners, as large taxpayers, were entitled to this assistance.
The District Judge in his written opinion stated that he could not “condemn too strongly the spending of public money on private property, no matter how big the taxpayer. It is wrong.” The District Judge, after rightfully condemning the spending of public money on private property, then correctly stated that the question to be determined was whether or not the road had been made a public road by the maintenance shown. We quote from his decision:
“In the case of Bordelon v. Heard [La.App.], 33 So.2d 88, 91, the court said:
“ ‘The parish road grader when being used in that area, graded it on a few occasions. But we don’t believe that what was done could be said to constitute a working and maintaining of the road within the meaning and intendment of the statute. * * * The most that can be said to have been done on the remainder of the road leading to the rear, was an occasional brushing up which we don’t believe amounted to a keeping-up of the road as required under the statute’.
“It will also be noted that this road was also enclosed by a gate. There is much more involved in this suit than at first meets the eye. Should this road be declared to be a public road it would necessarily follow that gates be removed. Pastures that straddled the road would have to be fenced along the road or abandoned.
“As said before there is no question presented here of right of passage for one whose property is surrounded, the only question presented here is whether or not this road is a public road.
“Considering the location of the road wholly or almost wholly within the confines óf a plantation, that it presently serves exclusively or almost exclusively this one plantation.; that from time immemorial it has been inclosed and entered only through gates that had to ibe opened; the fact that the principal money spent was disaster funds and not regular funds growing out of the terrible flood of 1945; the lack of a regular program of upkeeps all leads me to the conclusion that the road does not come within the scope of the act of 1914 above referred to and that the road is private.”
The Court of Appeal noted in the above cited case of Bordelon v. Heard, that the putting and maintaining of a gate across the road there in controversy indicated that the owner of the property did not consider the road a public highway. In the present case, there has always been a closed gate at the entrance to the Huckabay plantation, with a second gate at the bayou bridge, and a third gate at the southern juncture of the road with the old river bed. These gates constituted a physical barrier and were notice to plaintiff and the public that this plantation road was not “open to the travel of the public,” or a “public highway.”
The case before us is distinguishable from the case of Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709, 710, cited by plaintiff, on the facts. A reading of that opinion fails to show that any gates existed across the road in controversy or that there was any upkeep or maintenance work done by the owner of the plantation through which the road ran, or that the road itself served as standing space for cattle using pasture on either side, all of which is true in the case before us. We quote 'from 'the Frierson opinion: “The road in contest was kept up and maintained as a public road iby the police jury, and worked upon from time to time by road gangs employed by the police jury, and at times by prisoners, all under authority of the police jury, during a period exceeding 40 years before this suit was filed.”
Our conclusion is that the District Court correctly decided that while there had been an unjustified use of public funds on a private plantation road, nevertheless, the record as a whole, including the maintenance of gates at the entrance to the plantation and elsewhere, *688 the complete use and control of the right-of-way itself, particularly at points where the road passed through the plantation pasture land, and the individual maintenance work done by defendant, did not show the type of maintenance and control of the road by authority of the police jury to make it a public road as defined by LSA-Revised Statute 48:491, Act No. 220 of 1914.
The judgment appealed from is affirmed, with costs.