**77 So.2d 1**

**Mrs. Marguerite Ware WHARTON et al.**

**v.**

**CITY OF ALEXANDRIA, Louisiana.**

No. 41854.

Dec. 13, 1954.

Rehearing Denied Jan. 10, 1955.

J. B. Nachman, Edwin O. Ware, III, Alexandria, for plaintiffs-appellants.

Frank H. Peterman, City Atty., Newton B. Hargis, Asst. City Atty., Alexandria, for appellee.

MOISE, Justice.

Plaintiffs appeal from a judgment denying their application for an injunction and dismissing their demands.

The trial judge is to be commended for his studious presentation of the facts and his correct conclusions of law, and we, therefore, adopt his reasons as the decision of this Court. They read as follows:

"This is a suit to enjoin the City of Alexandria from paving George's Lane, a street which runs from City Park Boulevard to Jackson Street Extension. The City Council, acting under a petition presented by more than 60% of the abutting property owners, advertised for bids for the work according to plans prepared by the City Engineer. The plaintiffs own property abutting upon George's Lane and located on the south side thereof. This street was brought into the corporate limits in 1940, at which time it was known as Vance Avenue Extension. It was at various times in the past referred to as the Cutoff Road and possibly known by other names. In 1944 it was given the name of George's Lane under a resolution of the City Council to honor the memory of George Patterson who was killed in World War II. This was done at the request of citizens in that neighborhood.

"The plaintiffs' primary complaint is that George's Lane was never dedicated as a public street or road and that some of the area which it occupies is inside property belonging to them. In the alternative plaintiffs ask that if George's Lane is a public street then the city should be prohibited from including in the paving contract the item for subsurface drainage which would be assessed against the abutting property owners as part of the cost.

"The city's position is that George's Lane is a public street or thoroughfare by tacit dedication even if it was never formally dedicated as a street. As to the alternative plea, the city contends that drainage is a necessary part of the work to be done in paving of a street and that George's Lane cannot be paved in the proper man-

ner without making provision for drainage. The Court is therefore called on to decide first whether plaintiffs are entitled to an injunction prohibiting the city from letting a contract for this paving on the ground that the street has never been dedicated. Should this issue be decided adversely to plaintiffs, the Court is then required to pass on the alternative plea which questions the right of the city to include subsurface drainage as part of the work to be done under the paving contract. We shall discuss first the issue raised by plaintiffs that there has been no dedication of George's Lane.

"The evidence shows that beginning in 1922 when George's Lane was a Parish road the Police Jury operated graders and road machines over it. Messrs. Melder and Young, supervisors of road work for the Police Jury between 1922 and 1929, identified the pictures of George's Lane which are in the record and testified that every month during these years the road crew of the Police Jury put gravel on this road and worked it, which included grading, sloping, cleaning out ditches, etc. Another witness who operated the grading machine as an employee of the Police Jury testified to the same effect. These men are not connected with the city in any way and have no interest in the present lawsuit. The Court has no reason to disregard their testimony which is definite, clear and positive. While some of the plaintiffs stated that they did not see the Police Jury crew working the road, their testimony is negative, and furthermore they were absent from Alexandria during the years in question for long periods of time.

"The provisions of [LSA] R.S. 48:491 (which is based on Sec. 3368 of the Revised Statutes of 1870 and Act 220 of 1914) declare that all roads which are kept up, maintained or worked for a period of three years by authority of any parish governing authority shall be public roads. The Courts of this State have interpreted the law to mean just what it says and have held that a road is tacitly dedicated as such when it has been maintained as a public road by the Police Jury and worked from time to time by road gangs under authority of the Police Jury for three years. Frierson v. Police Jury of Caddo Parish, 160 La. 957, 107 So. 709; Porter v. Huckabay, 221 La. 120, 58 So.2d 731; Ferrente v. Tantilla, La.App., 42 So.2d 379; and Miguez v. Gautreaux, La.App., 40 So.2d 679. (Louisiana citations ours.)

"The evidence shows that George's Lane has been used for twenty-five years or more as a public highway furnishing access to homes of people living along its boundaries and that it has been generally recognized and accepted as such. It has been in constant use as a highway to the knowledge of plaintiffs and has been accepted by them and their ancestors in title as well as the general public as a street or road for many years. Under the law and

the facts the Court holds that George's Lane is a public road or street by tacit dedication.

"While it appears unnecessary to give any further consideration to this issue, we might mention in passing that the plaintiffs and their authors in title have acknowledged that there was a road in front of their property. The deed by which Rev. E. O. Ware acquired the property in 1898 describes it as containing 23.70 acres being "bound on the north by the main plantation road or the road donated by Pintard H. Hynson to the Parish of Rapides for the purpose of opening up the new Bayou Robert Road.' Again in the deed from Rev. E. O. Ware to his daughter, Mrs. Marguerite Ware Wharton, one of the plaintiffs, the tract of 2.25 acres which she bought is described as starting at the corner of the George Patterson property on the Cutoff Road 'fronting 145.3 feet on said road'. Finally, Mrs. E. O. Ware as late as 1944 signed a petition together with other citizens residing along George's Lane in which she stated that the road originally known as the Cutoff Road and later as Vance Avenue Extension was a street and she asked that the name of the street be changed to George's Lane.

"Respecting the alternative plea of plaintiffs that the city should be enjoined from including subsurface drainage in the plans to pave George's Lane, it is argued that the statute under which the paving is to be done does not mention drainage. Plaintiffs also contend that the proposed drainage will be of no special benefit to them. It is our appreciation of the law that authority to pave includes authority to grade, curb and drain. This is discussed in Redersheimer v. Bruning, 113 La. 343, 36 So. 990, where numerous authorities are cited in support of the principle that drainage is properly included where there is authority to pave. The Redersheimer case is cited with approval in City of Lafayette v. Doucet, 148 La. 166, 86 So. 724. (Louisiana citations ours.)

"It is argued by plaintiffs that they would not be benefitted by the proposed drainage installation. The testimony of the City Engineer explains why the type of paving covered by the plans and specifications is desirable. He stated that the type of drainage contemplated would eliminate open ditches which are a hazard to the traveling public, and would also do away with the necessity of building retaining walls of concrete along the ditches to prevent erosion of the dirt under the pavement and prevent it from washing into the ditches and thereby causing the pavement to be weakened. There was some argument that plaintiffs should not have to pay any part of the cost of drainage and that it was improper to assess this cost on a front-foot basis. We feel that this argument is answered by the decision in the City of Lafayette v. Tanner, 149 La. 430, 89 So. 314. In the final

analysis, the type of drainage structure which is desirable and the reason for including it in the proposed paving project is a legislative function with which the court should not interfere unless the City Council has abused its authority. This we do not find to be the case. The City Engineer explained why subsurface drainage is proper and desirable, and there was no proof to the contrary. In the Hagman case, supra, the Court recognizes this principle and there is other jurisprudence in Louisiana to the same effect. We therefore feel that there is no basis for enjoining the city from including drainage in the proposed contract for paving George's Lane as described in the plans and specifications. (Louisiana citations ours.)

"The remaining question for disposal is the extent of the area to be covered by the paving. The plans of the city call for a street 24 feet wide from curb to curb. The property of plaintiffs is south of George's Lane and the distance from the center of the street to the outside of the proposed curb on the south side would be 12 feet. The map filed in evidence by the City of Alexandria and the testimony of the city's witnesses show that the construction of a street 24 feet wide would not disturb the plaintiffs in the possession of property owned by them or take in any land to which they are entitled. Beginning at the dividing line between O. R. Stephens and Mrs. Marguerite Ware Wharton there is a fence along the front of her property and it is more than 12 feet from the center of George's Lane. The front corners of her property are marked by iron stakes and it is evident that this is the front line of her property because it is so marked and is so described in the deed by which she acquired it. It accords with her deed in that the tract is described as 'starting at an iron bar at the corner of the property of George Patterson on the Cutoff Road, etc.' (the George Patterson property is that which now belongs to O. R. Stephens). Following this fence line and the projection thereof in an easterly direction toward Bayou Robert it appears that the proposed pavement would not go beyond this property line. The maps filed by the city show that the front line of the Wharton property is anywhere from 15.75 feet to 13.90 feet from the center of the proposed new street and that a paved highway extending 12 feet from the center line of the new highway would not invade the premises occupied by the plaintiffs. The record shows that there are fire hydrants, light poles, waterlines and other installations which belong to the city and which have been installed apparently without objection in front of the Wharton property. It is not likely that these installations were placed inside the private grounds of the Wharton estate and nothing in the record shows that there was any objection to the establishment of these utility lines by the plaintiffs or any

other objection to the locations which they now occupy.

"In addition to the foregoing, attention should be called to the deed by which the property was originally acquired by Rev. E. O. Ware. This deed described the area as containing exactly 23.70 acres bounded in front by the road and on the south and east by Bayou Robert. The Lafargue map filed in evidence by plaintiffs, if taken as showing the correct boundary of the north line of. the Ware property, would include a greater acreage than that acquired by Rev. E. O. Ware. That part of the original Wharton property sold to John L. La Croix shows on the map to contain 10.30 acres. The property of Marguerite W. Wharton according to this same map is shown to contain 2.25 acres. The acreage sold to the Chronicle Publishing Co. does not show on the Lafargue map, but a calculation establishes that it contains 4.98 acres, and that which remains of the Wharton estate contains 6.50 acres. This gives a total of 24.03 acres."

A supplemental brief has been filed by plaintiffs-appellants, in which the contention. is made that the inclusion of storm sewers in the paving project is beyond the power and authority of the defendant municipality under the special assessment statute.

■ We agree with the authorities cited by the trial judge that the power to pave includes the power to construct the necessary sewerage and drainage. In addition, we have closely studied the resolution of the City of Alexandria, and we find that it includes drainage. This resolution reads:

"Whereas, a written report has been filed with the City Council advising that the petitions for paving of the hereinafter named streets with Portland cement concrete together with necessary curbs, gutters and drainage structures has been checked and found to be signed by more than 50 percent of the abutting property owners,

"Be It Resolved By the Council Of The City of Alexandria, Louisiana, in legal session convened that the street improvements above mentioned be made covering the following streets:

"1. Pershing Street from Roosevelt Ave. to Tennessee Ave.

"2. George's Lane from City Park Blvd. to Jackson St.

"3. North Eighteenth St. from Rapides Ave. to Bolton Ave.

"Be It Further Resolved, Etc., that the Secretary-Treasurer be directed to advertise for separate bids for said work same to be opened at a meeting of the City Council on Monday, October 19, 1953, at 10:00 A.M. in the office of the Mayor at City Hall and that each bidder be required to furnish a certified check or bid bond for five percent of the amount of his bid and that the city reserve the right to reject any or all bids and waive informalities."

■ Also, LSA–R.S. 33:3381, permitting municipalities to engage in paving such as is herein involved, specifically states that the costs of paving shall include all expenses necessary in the performance of the work. This would include drainage.

For the reasons assigned, the judgment of the trial court in favor of defendants, City of Alexandria, its Mayor, its Commissioner of Streets and Parks and its Commissioner of Finance and Public Utilities, and against the plaintiffs, Mrs. Marguerite Ware Wharton, William L. Wharton, Mrs. Elizabeth Ware Steadman, Miss Blanche Ware, Mrs. Jewell Ware Dean, Edwin O. Ware, III, and William E. Ware, denying the application for an injunction and rejecting the demands of plaintiffs and dismissing their suit at their cost, is affirmed.