GLADNEY, Judge.
Albert Harris seeks injunctive relief to prevent the Avoyelles Parish Police Jury from destroying a fence constructed on property in his possession for the purpose of blocking ingress and egress from a lane or strip of ground which defendant contends is a public road. After trial a permanent injunction was granted as prayed for by petitioner, prohibiting the removal of the fence. From the judgment so rendered defendant has appealed.
Appellant principally assigns two errors to the decree of the trial court, which are: first, the failure to sustain defendant’s exception of no cause and no right of action directed at plaintiff’s failure to allege and prove ownership of the land involved; and, second, the court’s finding the strip of land in controversy cannot be considered as having the status of a public road.
We must reject defendant’s first objection for it is our opinion the issues involved, and especially plaintiff’s right to assert his legal contention herein, are not contingent upon a disclosure of title.
Plaintiff’s action is in the nature of a possessory action as predicated on Code of Practice articles 49, 50, 51, and 52, and the right of injunction is unquestionably claimed under the provisions of Code of Practice article 298 (par. 5). These articles provide:
Art. 49:
“Requisites of Possessory Action.— In order that the possessor of a real estate, or one who claims a right to which such estate may be subjected, may be entitled to bring a possessory action, it is required:
“1. That he should have had the real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient;
“2. That he should have had that possession quietly and without interruption, by virtue of one of the titles prescribed in the forty-seventh article, for more than a year previous to his being disturbed; provided the possession of less than one year be sufficient, in case the possessor should have been evicted by force or by fraud;
“3. That he should have suffered a real disturbance either in fact or in law;
“4. That he should have brought his suit, at the latest, within the year in which the disturbance took place.
“When the possession of the plaintiff is accompanied with all those circumstances, it matters not whether he possesses in good or in bad faith, or even as a usurper, he shall nevertheless be entitled to his possessory action.”
*484 Art. 50:
“The disturbance which gives rise to the possessory action may be of two kinds; disturbance in fact, or disturbance in law.”
Art. 51:
“Disturbance in fact occurs when one, by any act, prevents the possessor of a real estate, or of a right growing from such an estate, from enjoying the same quietly, or throws any obstacle in the way of that enjoyment, or evicts him through violence, or otherwise.”
Art. 52:
“Disturbance in law takes place when one, pretending to be the possessor of a real estate, says that he is disturbed by the real possessor, and brings against the latter the pos-sessory action; for in such a case the true possessor is disturbed by this action, and may also bring a possessory action, in order to be quieted in his possession.”
Art. 296:
“Injunction, or prohibition, is a mandate obtained from a court, by a plaintiff, prohibiting one from doing an act which he contends may be injurious to him or impair a right which he claims.”
Art. 298:
“The injunction must be granted, and directed against the defendant himself, in the following cases: * *
“5. When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of a real estate, or of a real right, of which he claims either the ownership, the possession or the enjoyment.”
It is not seriously disputed plaintiff was in actual and real possession of the strip of land for more than a year prior to suit, and, therefore, we find no error in the action by the trial court in overruling the exceptions.
The remaining question is whether the property in controversy has attained the status or character of a public road under the provisions of LSA-R.S. 48:491, which, inter alia, recites all roads in any parish which have been or are hereafter kept up, maintained or worked for a period of three years by authority of any parish governing authority, shall be public roads. Another provision of the statute, LSA-R.S. 48:511, declares no person shall close, obstruct, or change any legal road except upon order of the governing authority of the parish. The above provisions appear to have been a part of our statutory law since the enactment of Act 220 of 1914.
A public road or highway was defined in Galloway (Southern Underwriters, Intervener) v. Wyatt Metal & Boiler Works, 1938, 189 La. 837, 181 So. 187, 190:
“A public road or highway is defined by Blashfield in Volume 1, of his Encyclopedia of Automobile Law and Practice, Permanent Edition, § 3, as follows, viz.:
“ 'A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure. It is a public thoroughfare, and statutes regulating the operation of automobiles on the highways in the interest of public safety will ordinarily be construed to include all ways used by public right for public travel. * * sM
“Under article 705 of the Civil Code a public highway or public road is defined as follows, viz.:
“ ‘Public roads are those which are made use of as highways, which are generally furnished and kept up by the owners of estates adjacent to them.’
*485 “And under article 706 of the Civil Code a private road is defined as follows, viz.:
“ ‘Private roads are those which are only open for the benefit of certain individuals, to go from and to their homes, for the service of their lands, and for the use of some estate exclusively.’ ”
And in Porter v. Huckabay, 1952, 221 La. 120, 58 So.2d 731, 733, the court reversing La.App., 50 So.2d 684, said:
“The language of the statute designating a road to be public, in ■ cases where it has been maintained or worked for a period of three years by a parish governing authority, is explicit and unequivocal. The circumstance that defendant maintained three gates is indicative only of his intention to retain control of the road and is without bearing on the question of its upkeep, which was supplied by the Police Jury at his solicitation.”
Evidence was presented on behalf of the police jury through the testimony of J. H. Olivier, Mrs. T. H. Littlepage, Wiltz Lacour, Jimmy Bundrick, Vernon Townsend and others who testified that the road in question had, been worked for a period of more than thirty years by the police jury and until plaintiff acquired the property in 1952 it was used at least to some extent, regularly by Townsend, Bundrick and some of the tenants on the Littlepage property.
Plaintiff called in his behalf Milton Du-cote and Thomas Lindsey. Defendant filed certain photographs which indicate the character of the road in question as it appears about the time of the trial.
Without attempting to detail all of the witnesses who testified, we shall produce our findings which indicate quite plainly to us that the road, at least prior to 1946, had taken on the character of a public road by reason of the fact that it had been worked and maintained as such for a period-in excess of three years.
J. H. Olivier, seventy-six years of age, testified the road has been used as a public road ever since the owners of adjacent property gave the right-of-way for its use by the public; that he and Jack Barbe had lived about one-half mile east from the road in question and both had traveled it on many occasions; that thirty-five years ago there was a sawmill which was reached by the road passing between the property presently owned by Littlepage and plaintiff; and that along this road there were at least two cabins on the Littlepage property and an old home occupied by the Holloway family on the property presently owned by plaintiff. Olivier further testified that at the entrance to the road where plaintiff has obstructed passageway, for a number of years there was a bridge approximately eight feet wide, but it has deteriorated or was destroyed, and thereafter people, in order to use the road, crossed through the ditch; and that Foster Barbe had also lived near the west end of the road but had moved away some twelve years ago. He further stated the police jury had worked the road repeatedly and the last time he had observed a bulldozer working the road was about six years ago.
Mrs. T. H. Littlepage testified that before she moved away in 1924, the road was used as a public road, that she saw evidence of it having been worked, and that her home was located about one-fourth of a mile south of the fence in question.
Wiltz Lacour worked for the police jury for about fifteen years prior to 1948. When he went to work, he testified Roy Johnson, the president of the Avoyelles Parish Police Jury, told him just to continue working the roads as the people wished; that he had occasion to work a ditch on the road? and spread the dirt thereon over the road bed for at least once a year; that on .each occasion when he was dragging the ditches he spread the dirt on the road with a grader and did this work at least. once a year. *486 Others testifying the road was publicly worked were Jimmy Bundrick, Vernon Townsend, Dawson Barre and George Voll-man. Bundrick testified that he had lived in the vicinity of the road and had used it for eleven years; that the police jury had worked the road since 1951 until the plaintiff closed up the road about a year before the trial of this'case. Townsend said he had formerly leased and owned property in the rear of the road; and that the police jury had worked the road when such work was required. He admitted he had for a period of years had gates at each end of the road, but made keys available to those who used the road. The Assistant Unit Foreman for the Avoyelles Parish road system, Dawson Barre, testified he supervised the working of the road regularly from 1943 until 1946, at which time the parish went under the Unit System; and since that time it had not been worked as much; that he had been working for the parish since 1942 and that he was familiar with the road in controversy; that he started to work the road himself as an employee of the parish in 1943, and worked it until August, 1946; and that he knew about a year and one-half prior to the trial the police jury reworked the ditch at the side of the road and reworked the road up to the back fence. This witness upon being questioned as to what was meant by “pulling the ditches” explained that “you have to go into the ditches and get some dirt and then take the dirt and spread it over the shoulder.” He said that when he first started to work the road there were two Negro families living beside the road, one on the Littlepage property and one on the Olivier property. George Vollman, a member of the police jury from the Tenth Ward wherein lies the road in question, testified that he had made a recent inspection of the road at the request of plaintiff; that there were no pecan trees growing in the middle of the road as testified to by Harris, and that one could see there had been a road there at some time, but it had not been kept up during the past few years.
Photographs tendered in evidence plainly show the road has a crown and ditches on both sides, the ditches on the north side being somewhat deeper than the other. No evidence was presented to show the road was worked by parties other than by employees of the Avoyelles Parish Police Jury-
Plaintiff’s witnesses gave no effective evidence upon the status of the road and plaintiff, to a large extent, relied upon the testimony of Olivier, Lacour and several other witnesses who testified in favor of defendant.
It is unnecessary to review the testimony in more detail, for it is apparent to this court that at least prior to 1946 the road was regularly worked by members of the police jury for more than three years, and was used as a public road, although since that time the evidence indicates the road has been infrequently worked, the last occasion being about a year and one-half ago. We, therefore, find from the undisputed testimony of Olivier, Dawson Barre, and others, the road attained the status of a public road and was tacitly dedicated as such under the provisions of LSA-R.S. 48:491. We are reluctant to disagree with the findings of our brother of the trial court, but feel that he has definitely fallen in error in this instance.
The defendant relies strongly upon Bordelon v. Heard, La.App.1947, 33 So.2d 88, 91, a decision by Judge Le Blanc of the First Circuit Court of Appeal. The cited case holds that an occasional brushing up of a pathway did not constitute “working and maintaining” within the meaning of the statute and further it was found that another road which had been in existence for twenty-five years had replaced the use of the strip of land in question, and any public status the latter might have attained has since been lost and abandoned. We find the case to be inapposite. The conclusion we have reached is supported by the following authorities:
*487 Frierson v. Police Jury of Caddo Parish, 1926, 160 La. 957, 958, 107 So. 709; Ferrente v. Tantilla, La.App.1949, 42 So.2d 379; Wharton v. City of Alexandria, Louisiana, 1954, 226 La. 675, 77 So.2d 1.
For the foregoing reasons, the decision of the district court is reversed, plaintiff’s demands are rejected and it is now ordered that there be judgment in favor of the defendant, the Avoyelles Parish Police Jury, recognizing the road in question to be a public road. All costs of this suit, including cost of appeal, are to be paid by plaintiff.